Carmen I. ROSADO SOSTRE,
Plaintiff,

v.

TURABO TESTING, et al., Defendants

No. CIV. 01–2157JP.

United States District Court,
D. Puerto Rico.

April 4, 2005.

---

Eileen J. Barresi–Ramos, Esq., Cond. Marbella del Caribe, Torre Este Local S–2, Erick Morales–Pérez, Esq., Erick Morales Law Office, Carolina, for Plaintiff.

Mr. Leonidas R. Almonte–Medina, Pro Se, Caguas, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

This is an action under Title VII filed by Plaintiff Carmen I. Rosado Sostre against Defendants Turabo Testing, Inc., and its President, Leonidas Almonte Medina, for damages due to sexual harassment and unjustified dismissal.

Procedurally, on July 21, 2004, and after counsel for Defendants resigned, the Court ordered new counsel for Defendants to make an appearance before this Court in

the form of a motion on or before Monday, August 2, 2004, and warned Defendants that their failure to appear would result in the Court entering judgment for Plaintiff to have and recover from Defendants an amount to be determined during a hearing scheduled solely to determine such amount.

The Court went to great lengths to ensure that Defendants received a copy of the Order, and it ordered the Clerk of the Court to send the order by certified mail, return receipt requested, to Mr. Víctor Gratacós, attorney for Turabo Testing, Inc. in bankruptcy matters, to Mr. William R. Reyes–Elías, former attorney for Defendants in this case, and to co-Defendant Mr. Leonidas R. Almonte–Medina. Defendants did not appear before the Court as ordered, and the Court accordingly entered Judgment for Plaintiff Carmen I. Rosado Sostre on November 29, 2004.

The Court held a damages hearing before a jury on March 9, 2005, where Plaintiff presented her witnesses and submitted documentary evidence in support of the damages claimed against Defendants. The Court heard live testimony from Plaintiff and from Dr. José Villanueva Pérez, and in support of her claims, Plaintiff also offered the following evidence: Exhibits 1–2, Plaintiff's earnings statements; Exhibit 3–4, Plaintiff's Income Tax Withholding Statements from 2000 and 2001 from A & M Contractors; Exhibit 5, Letter from Clínica de Terapias Pediátricas verifying Plaintiff's employment therein; Exhibit 6, Plaintiff's Medical Record at the office of Dr. José Rodríguez Cay; Exhibit 7, Curriculum Vitae of Dr. José Villanueva Pérez; Exhibit 7–A, Dr. José Villanueva Pérez' certification and registration card as a psychologist; Exhibit 7–B, Dr. José Villanueva Pérez' license to practice; Exhibit 7–C, Dr. José Villanueva Pérez' Diploma of Doctorate in Philosophy; Exhibit 8, Psychological Assessment of Plaintiff Produced by Instituto Integral de Servicios Psicológicos. As the hearing was in default, no one appeared or offered any evidence on behalf of Defendants.

On that same date, the jury rendered its verdict, and found that Plaintiff had proven her damages by a preponderance of the evidence, and returned a verdict in her favor and against Defendant Turabo Testing, Inc. The jury rendered its verdict in favor of Plaintiff, to have and recover as follows:

a. *for Pain and Suffering (Question 2(A)(I) of the Verdict Form) as a consequence of Defendants' actions under Title VII:* from Defendant Turabo Testing, Inc., the amount of **Two Million, Five Hundred Thousand Dollars ($2,500,000.00);**

b. *for Loss of Earnings (Question 2(A)(ii) of the Verdict Form)* for loss of earnings: from Defendant Turabo Testing, Inc., the amount of **Five Hundred Thousand Dollars ($500,000.00);**

c. *for Pain and Suffering (Question 2(B) of the Verdict Form) as a consequence of Defendants' actions under Puerto Rico Law 100:* from Defendant Leonidas Almonte, **NO MONEYS.**

Based on the evidence submitted, and after due deliberation, the Court makes the following Conclusions of Law.

## II. CONCLUSIONS OF LAW

At the outset, the Court makes clear that it is issuing this Opinion and Order based on the fact that since this was a default hearing where Defendants did not appear, it has to proceed with caution and protect Defendants' rights and interests, even in their absence. For that reason, it must intervene when it is of the opinion, as in this instance, that the jury

verdict as rendered, cannot stand. For the following reasons, the Court hereby **REMITS** the jury award.

Title VII of the Civil Rights Act of 1964 provides that ... "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1).

■ As is well known, Title VII is the mainstay of the laws which Congress enacted to end discrimination in the workplace. Concerned that Title VII's reach was too narrowly phrased, Congress later amended the statute to make manifest that discrimination "because of sex" or "on the basis of sex" included discrimination, among others, sexual favors and "because of or on the basis of pregnancy, childbirth, or related medical conditions." Pub.L. 95–555, § 1, 92 Stat.2076 (Oct. 31, 1978), codified at 42 U.S.C. § 2000e(k) (1982). *See Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148 (1st Cir.1990). However, this Circuit has not yet decided the issue of individual liability under Title VII, and had thus far declined to rule on it. *See Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 951–52 (1st Cir.1995) (leaving the Title VII individual liability question open); and *Serapión v. Martínez,* 119 F.3d 982 (1st Cir.1997) (same holding). Therefore, this Court will adopt the usual ruling of this issue in this district, and the corporation—in this instance, Turabo Testing—will be the only one held responsible under Title VII.

Puerto Rico's Law 100, Title VII's local counterpart, seeks to prevent discrimination in the workplace by reason of age, race, color, religion, sex, social or national origin or social condition. 29 P.R. Laws Ann. § 146. This statute, as opposed to the federal statute, seeks to hold individual employers or supervisors personally liable for their discriminatory actions, if they are the plaintiff's supervisor and are personally responsible for causing the plaintiff's injury.

Since this was a default hearing, the Court accepted as true all allegations in the Complaint, and therefore, liability was already established against Defendants when the hearing began. The jury's job, therefore, was only to determine if Defendants' actions had caused Plaintiff damages, and if so, in what amount she should be compensated therefor.

### A. The Title VII Award

■ It is well established that a Court will not disturb a jury's verdict unless it is against the clear weight of the evidence. *See Brady v. Fort Bend Cty.,* 145 F.3d 691, 713 (5th Cir.1998) and *Dotson v. Clark Equip. Co.,* 805 F.2d 1225, 1227 (5th Cir. 1986). While this Court does not normally engage in this practice, the existing law prevents the Court from entering a verdict for the amount awarded by the Jury.

■ Title VII has a maximum award of money it allows a Court to award, depending on the number of employees that the company has. At the outset, the Court notes that the maximum awards in the statute are substantially lower than the Two and One Half Million Dollars the jury awarded Plaintiff.

3) Limitations

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000. 42 U.S.C.A. § 1981a(3).

During her direct testimony, Plaintiff testified that Turabo Testing employs approximately 35 employees. Therefore, and according to the statute, the maximum allowed for companies that employ more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year is **FIFTY THOUSAND DOLLARS ($50,000.00)**. Since the jury award was so high, however, it evidences that the jury found that Plaintiff's compensatory damages were elevated. Therefore, the Court **REMITS** Plaintiff's award for compensatory damages to the maximum allowed by the statute, **FIFTY THOUSAND DOLLARS ($50,000.00)**.

### B. The Loss of Earnings Award

■ Regarding the award for loss of earnings, the Court finds the same to be unsupported by the evidence that was presented at trial. It has been well established that in order for an award of damages to ensue, the damages must be proven with *reasonable certainty*. *See Allens Mfg. Co., Inc. v. Napco, Inc.*, 3 F.3d 502 (1st Cir.1993); *National Chain Co. v. Campbell*, 487 A.2d 132, 134–35 (R.I.1985) (damages must be established "with reasonable degree of certainty" and plaintiff "cannot rely upon speculation" in order to prove his damages); *Restatement (Second) of Contracts*, § 352 (1981) ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.").

■ The Court finds that the jury's award of $500,000.00 is grossly excessive and inordinate in light of the evidence presented. In particular, it finds that the jury was specifically guided by the Complaint, which asks for the total amount that was awarded as damages.

Once again, as it did during the trial, the Court must mention that the burden of proving loss of earnings is on the Plaintiff; that is to say, she must not only allege loss of earnings, but must also *prove that she would have earned that money*. It would seem to the Court that by awarding $500,000.00 for loss of earnings to a person that earned approximately $1,800.00 a month, the jury clearly did not engage in the mathematical process that was necessary in order to properly calculate Plaintiff's loss of earnings. Therefore, the amount they awarded Plaintiff was decided upon by sheer speculation.

According to the Court's math, Plaintiff made $280.00 a week at Turabo, for a total of $1,120.00 per month for salary alone. Plaintiff additionally testified that she spent two (2) extra hours per day, five days a week at $14.00 per hour in overtime ($560.00/month) and five (5) hours every other Saturday at $14.00 per hour in overtime ($140.00/month), for a total of $1,820.00 per month. Although she also testified that she received some money in royalties of year-end bonuses, no evidence was provided to the Court as to their

existence. Therefore the Court shall not consider them in its analysis.

After being dismissed, Plaintiff testified that she remained unemployed for five (5) months until she obtained a job at the Flamboyán Apartments. Therefore, she sustained $9,100.00 in loss of earnings during those five months. She then testified that she worked at the Flamboyán Apartments for one year, earning approximately $890.00 a month. Therefore, she sustained a loss of earnings of **$11,160.00** during that year, the difference in her earnings from Turabo Testing and Flamboyán Apartments.

In March 2001, Plaintiff obtained a job at Clínicas Pediátricas earning $7.00 an hour working forty (40) hours per week, for a total salary of $1,120.00 monthly until she received a raise in March 2002; therefore, from March 2001 through March 2002 her loss of earnings was **$8,400.00**. In March 2002, she received a raise of $8.00 an hour, for a total monthly salary of $1,280.00 per month, until August of 2002, when she received yet another raise. Therefore, her loss of earnings from March 2002 through August 2002 totals **$6,480.00**. Lastly, from August 2002 until today, her salary has been $1,600.00 per month. Therefore, her loss of earnings from August 2002 until today is **$6,820.00**. Adding all these figures, the Court comes to a total figure of **FORTY–ONE THOUSAND, NINE HUNDRED AND SIXTY DOLLARS ($41,960.00)** for loss of earnings. Plaintiff further testified that she has spent a total of **$900.00** in visits to the psychiatrist in order to help her overcome her ordeal, bringing the grand total to **FORTY–TWO THOUSAND, EIGHT HUNDRED AND SIXTY DOLLARS ($42,860.00)**.

Based on the aforementioned legal principles, and as applied to the facts in this case, the Court hereby **REMITS** the total amount of the Jury's award of **Three Million Dollars** to **NINETY–TWO THOUSAND, EIGHT HUNDRED AND SIXTY DOLLARS ($92,860.00)**, plus post-judgment interest, at the prevailing rate of interest calculated as of the date of the entry of Judgment.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby **REMITS** the Jury's award to Plaintiff Carmen I. Rosado Sostre to **NINETY–TWO THOUSAND, EIGHT HUNDRED AND SIXTY DOLLARS ($92,860.00)**, plus post-judgment interest at the prevailing rate of interest computed as of the date of the entry of Judgment. Judgment will be entered accordingly against Turabo Testing, Inc., and the case **DISMISSED** against its President, Leonidas Almonte Medina.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**