**Diliana HERNANDEZ–PAYERO, Plaintiff,**

v.

**Commonwealth of PUERTO RICO, et al., Defendants.**

**Civil No. 02–2470 (FAB).**

United States District Court, D. Puerto Rico.

April 27, 2007.

Carlos A. Piovanetti–Rivera, Piovanetti Law Office, Carlos A. Piovanetti–Dohnert, San Juan, PR, for Plaintiff.

Felix M. Roman–Carrasquillo, Idza Diaz–Rivera, P.R. Department of Justice, Jo–Ann Estades–Boyer, Prado, Nunez & Associates, PSC, San Juan, PR, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On September 27, 2002, Diliana Hernandez–Payero, a former police officer, filed

this sexual harassment suit against her employer, the Commonwealth of Puerto Rico and individual defendants Carlos Castaño–Monell, Miguel Pereira, Pierre Vivoni, Juan Caceres–Mendez, Jorge Rivera–Correa, Miguel Angel Aviles–Heredia, Manuel de Jesus Torres–Hernandez, William Miro–Zayas, Victor Rivera–Gonzalez, Juan Comas–Valle and Pedro Toledo, the current Police Superintendent, seeking injunctive and monetary damages for discrimination under Title VII of the Civil Rights Act, the Civil Rights Act of 1991, § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1) and section § 1983 of Title 28 of the United States Code, as well as supplemental state law claims.[1]

Now before the Court are Defendants' objections (Docket Nos. 203, 208) to the Report and Recommendation ("R & R") issued by Magistrate Judge Camille Velez–Rive on March 20, 2006 (Docket No. 194). The Magistrate Judge recommended that the Court grant in part and deny in part Defendants' motions for summary judgment. (Docket Nos. 137, 144). Plaintiff has filed responses to defendant's objections to the R & R. (Docket Nos. 209, 210). After reviewing the R & R and the specific objections thereto *de novo*, the Court adopts the R & R in its entirety, and grants in part and denies in part Defendants' motions for summary judgment.

## I. *Standard for Reviewing a Magistrate Judge's Report and Recommendation*

A District Court may refer pending dispositive motions to a Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b);

Loc. Rule 72(a). Any party adversely affected by the report and recommendation may file written objections within ten days of being served with the Magistrate Judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(a)(b)(1). *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.*, 428 F.Supp.2d 4, 6 (D.P.R.2005) (*citing LaCedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

## II. *Factual and Procedural Background*

The following facts are undisputed or submitted by plaintiff and unopposed by defendants.[2]

---

**1.** Plaintiff asserts state law claims under Law 100 of June 30, 1985, 29 L.P.R.A. § 146 ("Law 100"), and under Articles 1802 and 1803 of the Civil Code, P.R. Laws Ann. tit. 31 §§ 5141 and 5142.

**2.** Only defendant Castaño submitted a reply to Plaintiff's statement of material facts pursuant to Local Rule 56(e). Castaño does not admit or deny the allegations of harassment but rather maintains they are irrelevant to the issues before the Court. (Docket No. 176–2 at ¶ 6).

Plaintiff Hernandez–Payero, who was a member of the Puerto Rico Police Department ("PRPD") from 1992 until she left the force in 2002, was assigned to the Isla Verde Tourist Zone Precinct. (Plaintiff's Statement of Facts ("PSF"), Docket No. 156, ¶ 1). According to Hernandez–Payero, she began to be sexually harassed when defendant Castaño–Morell began working as her supervisor in April of 1999. *Id.* at ¶¶ 6, 9.

For instance, Hernandez–Payero alleges that the very first time they met, Castaño–Morell grabbed her genitals instead of shaking her hand. *Id.* at ¶ 8. Two or three weeks later, Castaño–Morell allegedly engaged in the same type of conduct while requesting that Hernandez–Payero work night shifts alone with him in his office. *Id.* at ¶ 9 Hernandez–Payero also testified at her deposition that Castaño–Morell would look at her while grabbing himself and licking a pen with his tongue. *Id.* at ¶ 15

On May 20, 1999, Castaño–Morell asked plaintiff what Hernandez–Payero had on her face. *Id.* at ¶ 12 When Hernandez–Payero replied that they were blackheads, Castaño said that they were really sores ("chancro"). *Id.* Hernandez–Payero felt that the use of the word "chancro" was sexual harassment because it implied she had contracted a sexually transmitted disease. (Hernandez–Payero's Deposition, Docket No. 156, Exh. 4, p. 74–75) Also present at the time the comment was made was defendant Caceres–Mendez, who allegedly commented that because Hernandez–Payero's husband was in the military she should be careful because it was common knowledge that men in the military were sexually promiscuous. (PSF, ¶ 15). During this exchange, Castaño–Morell was allegedly laughing, grabbing himself and recounting the incident to others in the office. (PSF, Exh.4, p. 74–75)

Hernandez–Payero maintains that it was at this point that she began complaining about Castaño–Morell. (PSF, ¶ 20–24) On May 21, 1999, she filed a written complaint against Castaño, complaining about how he changed her work schedule. *Id. (See also* Docket No. 181, Exhs. 32–35). On July 7, 1999, Hernandez–Payero submitted another letter addressed to defendant Rivera–Correa which again complained about changes in her schedule in purported retaliation for her previous complaints. (Docket No. 181, Exh. 33) On or about July 12, 1999, plaintiff submitted another complaint to defendant Rivera–Correa alleging that Castaño–Morell had threatened her that "if she wanted war, war is what you are going to get." (Docket No. 181, Exh. 34) According to Hernandez–Payero, another letter complaining of Castaño–Morell's conduct was sent to her supervisors on March 28, 2001. (PSF, ¶ 25; *see also* Docket No. 182, Exh. 9) [3]

On April 4, 2001, Plaintiff filed a sexual harassment complaint with the Administrative Investigation Division at the Carolina Police Area Headquarters. (Docket No. 136, ¶ 78) A meeting was held to discuss the matter and, shortly after the meeting, Castaño–Morell was transferred to another precinct and given instructions not to go near the Isla Verde Tourist Zone Precinct or Plaintiff's residence. *Id.*, ¶ 77; *see also* Docket No. 181, Exh. 21

Comas–Valle replaced Castaño–Morell shortly thereafter at the Isla Verde Tourist Zone Precinct. (PSF, ¶ 37; Hernandez–Payero's deposition, p. 87)

---

**3.** This letter appears to be the only letter in this series of complaints that explicitly mentions and alludes to sexual harassment.

After Castaño–Morell was transferred from the precinct, plaintiff further alleges, he began stalking her at her residence. In response to plaintiff's allegations, Comas–Valle issued a portable communications radio (walkie-talkie) and its charger unit to her and arranged her schedule to allow her to commute to work with another female co-worker. (Docket No. 136, ¶ 80; PSF, ¶¶ 47–49) Hernandez–Payero also filed a criminal complaint for stalking against Castaño but the district attorney determined that there was no cause to file criminal charges. (PSF, ¶ 49)

According to Hernandez–Payero, the last stalking incident took place on either July 1, 2001 or July 20, 2001. (PSF, ¶ 49, Exh. 20)[4] Plaintiff Hernandez–Payero was not sexually harassed at the work place after the departure of Castaño–Morell from the Isla Verde Tourist Precinct. (PSF, ¶ 43)

On October 10, 2001, Castaño–Morell and his new partner, Captain Edwin Torres–Ortiz, went to the Loiza Street Precinct, which is located in the same building as the Isla Verde Tourist Zone Precinct, notwithstanding that he had been instructed not to visit Hernandez–Payero's working facilities. (PSF, ¶ 51 and Docket No. 136, ¶¶ 95–96) According to Castaño–Morell, the purpose of the visit was to interview the commander of the Loiza Street Precinct. (Docket No. 144, p. 5) Upon hearing that Castaño was nearby, Hernandez–Payero became very nervous, started crying and had to be calmed by Comas. (Docket No. 156, ¶ 51). Although Comas thought she was overreacting, he went out into the parking lot and instructed Castaño not to enter the building. (Docket Nos.

181, Exhs. 18, 21) Castaño–Morell remained in the parking lot until his partner finished the interview inside the building.[5]

On November 1, 2001, Hernandez–Payero filed a complaint with the Anti–Discrimination Unit ("ADU") of the Puerto Rico Department of Labor and Human Resources. (PSF, ¶ 52) On January 14, 2002, the complaint was forwarded to the Equal Employment Opportunity Commission ("EEOC"). (Docket No. 166, Exh. 16) The complaint was dismissed on July 2, 2002 and the EEOC notified plaintiff of the termination of the discrimination charge proceedings and of her right to sue within ninety (90) days from receipt of notice of the termination. (PSF, Exh. 44, p. 2)

In addition, Hernandez–Payero filed an administrative complaint on April 4, 2002 with the Administrative Investigation Division of the Carolina Police Area Headquarters. On March 20, 2002, almost 11 months after the complaint was filed, the Administrative Investigative Division issued its findings. (Docket No. 154, Exh. 35)

On May 23, 2002, Hernandez–Payero submitted her constructive resignation letter allegedly in order to avoid further mental damages to her because Defendants had failed to take any action for her benefit. (Docket No. 156, ¶ 64)

On September 27, 2002, Hernandez–Payero filed this complaint. (Docket No. 1) After two amendments to the complaint were filed, Defendants filed motions to dismiss the claims against them. (Docket Nos. 40, 55) On September 30, 2004, Judge Jay A. Garcia–Gregory, issued an Opinion

---

4. Although Plaintiff's statement of uncontested facts states the last incident occurred on July 1, 2001, the police report lists the incident having occurred on July 20, 2001. (Docket No. 156, ¶ 49, Exh. 20).

5. Although it is unclear how Hernandez–Payero learned that Castaño was at the precinct, it is undisputed that she never saw or had any direct contact with him. (Docket No. 181)

and Order and dismissed the Title VII claims against the individual co-defendants for lack of individual liability as well as the section 1981(a) and Law 100 claims against defendant Castaño. The Court also precluded plaintiff from amending her complaint to include Law 69 and Law 17 claims on the grounds that they were time-barred. (Docket No. 78) Discovery progressed and in April 2005, Defendants filed motions for summary judgment. (Docket Nos. 137, 144). On August 5, 2005 these motions were referred to Magistrate Judge Velez for a report and recommendation (Docket No. 180).

On March 20, 2006, Magistrate Judge Velez issued an R & R recommending that the Court: 1) grant summary judgment as to co-defendants Haddock and Rivera Correa and dismiss the Title VII, section 1981, section 1983 and Law 100 claims against them; 2) deny summary judgment as to the Title VII claim against the Commonwealth of Puerto Rico; 3) grant summary judgment as to defendants Rivera–Correa and Comas and dismiss all federal claims (retaliation) against them; 4) deny summary judgment as to the argument by the remaining individual defendants (Pereira, Vivoni, Caceres, Aviles, Torres, Miro, Rivera–Gonzalez and Toledo) that the section 1983 claims against them are time-barred; 5) deny summary judgment as to defendants' argument that plaintiff failed to establish a *prima facie* case as to the retaliation, sexual harassment and hostile work environment claims; 6) deny summary judgment as to Castaño's argument that the section 1983 claims against him are time barred; 7) deny the Commonwealth of Puerto Rico's affirmative defense under *Faragher* and *Ellerth*; and 8) grant summary judgment as to defendants Haddock, Correa, Rivera–Correa and Comas with respect to the state law claims.

Defendants filed objections to certain portions of the R & R (Docket Nos. 203, 208) Specifically, Defendants argue that the Magistrate Judge erred in recommending denial of summary judgment as to: 1) the Title VII claim against the Commonwealth of Puerto Rico; 2) the section 1983 claims against defendants Toledo, Vivoni, Pereira, Rivera–Gonzalez, Miro, Aviles–Hernandez and Torres–Hernandez on the grounds that the R & R failed to address the alleged lack of supervisory liability; 3) the section 1983 claim against Castaño on the grounds that the claim was filed outside the applicable statute of limitations;[6] and 4) the Commonwealth of Puerto Rico's *Faragher/Ellerth* affirmative defense.[7] Plaintiff filed oppositions to the defendants' objection. (Docket Nos. 209, 210)

After reviewing the law, the record and submissions of the parties *de novo,* the Court hereby adopts the Report and Recommendation as set forth below.

### III. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos*

---

**6.** Defendant Castaño submitted a separate objection to the R & R. (Docket No. 203)

**7.** To the extent all federal claims are dismissed against an individual defendant, they request dismissal of the supplemental state law claims as well. (Docket No. 208)

*v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

To assess whether to grant or deny a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## IV. Analysis

### A. Continuing Violation

The Commonwealth and Castaño argue that the Magistrate Judge erred in determining that a continuing violation existed with respect to the Title VII and section 1983 claims. As discussed in detail below, the Court finds that Plaintiff has adduced sufficient evidence to raise a triable issue of fact as to whether a continuing violation occurred with respect to these claims.

#### i) Title VII Claim

■ The Commonwealth argues that the Magistrate Judge applied the improper standard when she determined that Castaño's visit to the police station in October 2001 constituted part of a continuing violation under both the serial and systemic violation theories. The Court finds these objections to be without merit and concurs with the Magistrate Judge's determination that a triable issue of fact exists as to whether Castaño's visit to the Isla Verde Tourist Zone Precinct in October, 2001 demonstrated that Hernandez–Payero's hostile work environment continued up until that date and therefore, her claim was timely brought before the EEOC.

The time for filing a complaint with the EEOC for unlawful employment practice pursuant to Title VII is governed by 42

U.S.C. § 2000e–5 (e)(1). Section 2000e–5–(1) requires a complaint to be filed with the EEOC within 180 days of the alleged discriminatory conduct or within 300 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." *Id.* Although the Anti Discrimination Unit is a qualified state agency, the 300 day limit does not apply to "charges alleging violations of Title VII by agencies or instrumentalities of the Government of Puerto Rico when they are not operating as private businesses or enterprises." 29 C.F.R. § 1601.74 n. 5. The PRPD is an instrumentality of the Commonwealth of Puerto Rico that does not operate as a private business or enterprise. Thus, all complaints must be submitted to the EEOC within 180 days of the alleged discrimination. *See Nieves–Cruz v. Comm. of Puerto Rico*, 425 F.Supp.2d 188, 192 (D.P.R.2006); *Lopez–Rosario v. Police Dep't*, 126 F.Supp.2d 167, 170–71 (D.P.R.2000). Because Hernandez–Payero filed her claim with the EEOC on January 10, 2002, any claims brought for instances of discrimination before July 12, 2001, would generally be barred unless the claims can be termed parts of a continuing violation.

■■■ The continuing violation exception is an equitable doctrine that applies to hostile work environment claims, which "do not turn on single acts but on an aggregation of hostile acts extending over a period of time." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir.2002). The Supreme Court has distinguished between claims to recover for discrete instances of harassment and discrimination from hostile work environment claims. *Ruiz–Sulsona v. Univ. of Puerto Rico*, 334 F.3d 157, 160 (1st Cir.2003). In *National Railroad Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061,

153 L.Ed.2d 106 (2002), the Supreme Court held that 42 U.S.C. § 2000e–5(e)(1) "precludes recovery for the discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* With respect to claims of a hostile work environment, however, the Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* The Court explained that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117. Thus, "[p]rovided that if an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." *Id.; See also Ruiz–Sulsona*, 334 F.3d at 160; *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 11 (1st Cir.2003). Even more so, prior conduct may be considered as "relevant background evidence", as long as there was an act contributing to the hostile environment within the 180–day filing period. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395–96 (1st Cir.2002). Thus, the question in this case turns on whether the PRPD engaged in any act within the time period "contributing to the claim."

■■ Unlike individual acts of discrimination, hostile work environment claims, by their very nature, contemplate an extended period of time. In *O'Rourke v. City of Providence*, the First Circuit Court of Appeals held that a continuing violation in a hostile work environment claim could be found where a city employer failed to

respond to the employee's repeated complaints of harassment adequately over an extended period of time. 235 F.3d 713, 732 (1st Cir.2001). Indeed, the court in *O'Rourke* recognized that it is not uncommon for hostile work environment to span several years. *Id.*, at 727.[8]

Clearly, Castaño's visit to plaintiff's workplace in October 2001, viewed as a discrete act, does not support an independent finding of sexual harassment or of a hostile work environment claim. *See Ruiz–Sulsona v. Univ. of Puerto Rico*, 334 F.3d at 160 Viewed in conjunction with the chain of events leading up to the incident, however, a reasonable jury could conclude that this act was part and parcel of the alleged hostile work environment created by Castaño and perpetuated by the PRPD. Specifically, a jury could conclude that notwithstanding the transfer to another department, the PRPD allowed a hostile work environment to continue, as is evidenced by the allegations of Castaño's continued stalking and PRPD's delayed investigation in response to her complaints. Furthermore, Plaintiff's reaction to the incident in October, 2001—irrespective of whether the visit was motivated by an intent to harass—remains relevant as to whether PRPD maintained or perpetuated a hostile work environment after Castaño's transfer.[9] Therefore, the Court finds that Plaintiff has adduced sufficient evidence at this stage of the proceedings to establish a triable issue of fact as to whether a hostile

work environment existed within the 180 day limitations period.

ii) Section 1983 Claim Against Castaño

Castaño argues that the Magistrate Judge erred in concluding that Castaño's appearance at the police station in October, 2001 was part of a continuous violation with respect to the section 1983 claim against him. Although the continuous violation doctrine was originally adopted by courts with respect to Title VII cases, the First Circuit Court of Appeals has adopted it to evaluate the timeliness of section 1983 claims as well. *See Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984); *Ruiz Casillas v. Camacho Morales*, 2004 WL 3622480, at *5 (D.P.R.2004). In addition, the Supreme Court's reasoning relating to continuing violations for Title VII claims applies with equal force to section 1983 claims. *See AMTRAK v. Morgan*, 536 U.S. at 113–115, 122 S.Ct. 2061; *Ruiz–Sulsona*, 334 F.3d at 160.

Section 1983 does not have a built-in limitations period, but instead borrows the forum state's statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 240–241, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Rosario Rivera v. Aqueduct and Sewer Authority of P.R.*, 472 F.Supp.2d 165, 170 (D.P.R.2007) *citing Lopez–Gonzalez v. Municipality of Comerio*, 404 F.3d 548, 551 (1st Cir.2005); *Wilson v. Garcia*, 471 U.S. 261, 276–278, 105 S.Ct.

---

**8.** Though there is no "mathematically precise test to determine whether plaintiff presented sufficient evidence that she was subjected to a hostile work environment ... the pattern of conduct complained of must be (1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership in a protected class, and (3) sufficiently burdensome to materially alter the conditions of the complainant's employment." *Bajana v. Potter*, 396 F.Supp.2d 78, 83 (D.P.R.2005)(*quoting, White*

*v. N.H. Dep't of Corr.*, 221 F.3d 254, 259–60 (1st Cir.2000)) (citations omitted). *See also Crespo v. Schering Plough Del Caribe, Inc.*, 231 F.Supp.2d 420, 427 (D.P.R.2002).

**9.** Although defendants claim that plaintiff did not feel threatened or harassed by Castaño's visit to the station, the deposition record is unclear as to this issue. *See* Docket No. 156, Exh. 16, p. 22; Docket No. 136, Exh. 34, p. 67–68.

1938, 85 L.Ed.2d 254 (1985); *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1st Cir.1997). In Puerto Rico, the limitations period for personal injuries is one year. *See* P.R. Laws. Ann. tit. 31 § 5298(2). Accordingly, the one-year term applies for section 1983 actions in Puerto Rico. *Torres v. Superintendent of the Police of Puerto Rico,* 893 F.2d 404 (1st Cir.1990).

"Although the limitations period is determined by state law, the date of accrual is a federal law question." *Carreras–Rosa v. Alves–Cruz,* 127 F.3d at 174. *See also, Rivera–Ramos v. Roman,* 156 F.3d 276, 282 ("For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law.") The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury". *Gonzalez Garcia,* 214 F.Supp.2d at 200; *Benitez–Pons v. Com. of P.R.,* 136 F.3d 54, 59 (1st Cir.1998).

Castaño argues that because he remained in the parking lot of the police precinct during the October, 2001 incident and did not enter the building where the Isla Verde Tourist Zone Precinct is located, it is unreasonable and impermissible to anchor the alleged actions that took place before April, 2001 to the discrete act of October, 2001. Clearly, the claims for discrete acts of discrimination occurring outside the one year statute of limitations are time-barred. Prior acts contributing to a hostile work environment, however, may be considered even if they fall outside the period if at least one of those acts occurred within the statutory period. *See AMTRAK v. Morgan,* 526 U.S. at 105, 119 S.Ct. 1003.

■ The Court concurs with the Magistrate Judge's determination that the incident in October, 2001, when viewed in conjunction with the allegations of ongoing harassment over a period of three years and the alleged incidents of stalking three months after defendant Castaño was removed from the Isla Verde Tourist Zone Precinct, do establish a triable issue as to Castaño's motive and intent during the October, 2001 visit to Loiza Street Precinct, which is in the same building as plaintiff's place of employment, the Isla Verde Tourist Zone Precinct. *See Mulero–Rodriguez v. Ponte Inc.,* 98 F.3d 670, 677 (1st Cir.1996); *Sanchez v. Public Building Auth.,* 402 F.Supp.2d 393, 399 (D.P.R.2005). In addition, a reasonable jury may view this incident as a part of Hernandez–Payero's claim of a hostile work environment.

Castaño further argues that even when a plaintiff alleges a violation within the appropriate limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware she was being unlawfully discriminated against while the earlier acts, now untimely, were taking place. Clearly, it is undisputed that plaintiff was fully aware of the specific instances of harassment; she submitted a letter complaining of harassment and filed an internal complaint requesting an investigation. The continuing violation doctrine remains applicable, however, with respect to the hostile work environment claim. Hostile work environment claims, unlike claims for individual instances of discrimination, accrue over a longer period of time and a jury may conclude that plaintiff did not "discover" that she was being subjected to such a hostile environment until the alleged stalking and the incident in October, 2001 took place. Consequently, summary judgment on this claim is **DENIED.**

B. Section 1983 Claims Against Officers Engaged in Supervisory Functions

Individual defendants, Pedro Toledo, Pierre Vivoni, Miguel Pereira, Victor Riv-

era–Gonzalez, William "Jovito" Miro Zayas, Miguel Aviles–Hernandez and Manuel de Jesus Torres–Hernandez, object to the R & R asserting that it failed to address their arguments and that there is insufficient evidence of their personal involvement with the alleged discrimination to support liability under section 1983. After reviewing the arguments and the record before it, the Court concurs with defendants and finds that Plaintiff has failed to establish the requisite level of personal involvement necessary to support the section 1983 claims against these defendants.

■ Because there is no *respondeat superior* liability under section 1983, supervisors may not be held responsible for the misdeeds of their subordinates unless they were actually involved in the deprivation of plaintiff's constitutional rights. *O'Neill v. Baker,* 210 F.3d 41, 47 (1st Cir.2000); *Kostka v. Hogg,* 560 F.2d 37, 40 (1st Cir.1977). For a supervisor to be liable under section 1983, a plaintiff must show that: (1) the supervisor's acts or omissions have deprived the plaintiff of protected rights; (2) the supervisor's action or inaction amounted to callous indifference or gross negligence with regard to the constitutional rights of others; and (3) the supervisor's action or inaction is affirmatively linked to the actual misconduct. *See Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Roman Figueroa v. Torres Molina,* 754 F.Supp. 239, 241–42 (D.P.R.1990). Accordingly, a supervisor may be held liable for what he does or fails to do if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights.

■ A supervisor displays reckless or callous indifference "when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance,* 868 F.2d 9, 18 (1st Cir.1989). A supervisor's failure to identify and take remedial action concerning an officer with disciplinary problems can create supervisory liability pursuant to section 1983. *See Gutierrez–Rodriguez,* 882 F.2d at 562–66; *Martinez Correa v. Lopez Feliciano,* 759 F.Supp. 947, 955–57 (D.P.R.1991). A key factor in determining supervisor liability is what knowledge the supervisor had regarding the subordinate's behavior. *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 93 (1st Cir.1994). Of course, a supervisor without actual knowledge will not escape liability if it is shown that he would have known of the injurious conduct but for his exercise of "willful blindness" or deliberate indifference. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994).

■ Lastly, a plaintiff must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. *See Bowen v. City of Manchester,* 966 F.2d 13, 20 (1st Cir.1992); *Pinto v. Nettleship,* 737 F.2d 130, 132 (1st Cir. 1984). This causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. *See Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902–03 (1st Cir.1988). Consequently, deliberate indifference to violations of constitutional rights can forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates. *See Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir. 1990). For instance, supervisor liability may attach upon a showing that a knowing

and conscious failure to "protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination." *Bohen v. City of East Chicago,* 799 F.2d 1180, 1187 (7th Cir. 1986).

In their summary judgment motion, these individual defendants argue that the lack of evidence of personal involvement compels dismissal of the section 1983 claims against them. In response, Plaintiff does not address each defendant specifically, but rather maintains that as ranking officers at the PRPD they had a responsibility to respond adequately to and properly handle her sexual harassment complaints and ensure that adequate sexual harassment policies were being implemented.

■■ After reviewing the record, the Court finds no evidence of personal involvement on the part of these defendants sufficient to support section 1983 liability. In addition to there being no evidence of direct involvement in the harassment alleged by plaintiff, there is no evidence of gross negligence, willful blindness or any other conduct that could be said to have created an atmosphere that allowed the alleged harassment to continue unfettered. While these individuals had varying responsibility for the development and implementation of the PRPD's policies on sexual harassment, the record is devoid of any suggestion that these officers mishandled these responsibilities or perpetuated a pattern of harassment at the Police Department, whether it be with respect to the plaintiff or in general. Thus, the section 1983 claims against defendants Toledo, Vivoni, Pereira, Rivera–Gonzalez, Miro–Zayas, Aviles–Hernandez and Torres–Hernandez must be dismissed. *See Maldonado–Denis,* 23 F.3d at 583 (finding "no competent proof of actual participation, or of a policy of tolerating similar

violations, or of deliberate indifference" with respect to supervising officers).

## C. *Faragher/Ellerth* Defense

■■ The Commonwealth argues that the Magistrate Judge erred in denying summary judgment on its *Faragher/Ellerth* defense. This defense relieves an employer of liability if it can demonstrate that it took reasonable care to prevent and correct harassing behavior and that the employee unreasonably failed to take advantage of available remedies. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807–808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

In *Faragher,* the United States Supreme Court set forth two types of hostile work environment claims: (1) harassment by a supervisor that "culminates in a tangible employment action" for which employers are strictly liable; and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense. *Pennsylvania State Police v. Suders,* 542 U.S. 129, 148, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; accord *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. In the latter situation, the employer may raise an affirmative defense to liability comprised of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; accord *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257.

■■ The *Faragher/Ellerth* defense applies to constructive discharge cases as long as there is no "tangible employment action" such as where a "supervisor's offi-

cial act precipitates the constructive discharge." 542 U.S. at 140–141, 124 S.Ct. 2342. What this means is that the *Faragher/Ellerth* affirmative defense "will not be available to the employer ... if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." *Id.* at 134, 124 S.Ct. 2342. Because Hernandez–Payero claims that she was constructively discharged but does not allege an official act which precipitated the discharge, the Commonwealth may avail itself of this defense.

Having determined that the defense is available, the question becomes whether the Magistrate Judge erred in determining that Defendants are not entitled to summary judgment on the issue. In their objection, Defendants argue that the undisputed facts establish that "as of April, 2001, the sexual harassment policy implemented by the Puerto Rico Police Department was functioning well enough that the alleged harassment ceased in its entirety after the immediate remedial measures were taken." (Docket No. 208, at 12). In addition, Defendants argue that Plaintiff failed to take advantage of the remedial measures that she knew were available to her as of April, 2001.

█ The Court finds the arguments are not supported by the record for various reasons. First, and as correctly determined by the Magistrate Judge, the mere existence of a grievance procedure and a policy against discrimination, coupled with an employee's failure to invoke that procedure, does not necessarily insulate an employer from liability. Second, it is not clear that the remedial measure of transferring Castaño to another precinct and instructing him not to have contact with the Plaintiff was sufficiently adequate to put an end to the harassment. Instead, the record contains evidence that Castaño continued to stalk Plaintiff after April, 2001. Third, the Court agrees with the Magistrate Judge's determination that the Commonwealth's alleged failure to issue a timely investigation may not only vitiate the *Faragher/Ellerth* defense but also act as a basis of liability. *See Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 21 (1st Cir.2003). *See also, Malik v. Carrier Corp.,* 202 F.3d 97, 106 (2nd Cir.2000) (" [A]n employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking [ . . . ] under federal law"). Accordingly, triable issues of fact exist as to whether the Commonwealth's remedial measures were adequate and if plaintiff unreasonably failed to take advantage of available administrative resources.

### D.   State Law Claims

Lastly, Defendants request that the Court decline to exercise supplemental jurisdiction over the state law claims if the federal law claims are dismissed. The Supreme Court has held that "if the claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court declines to exercise supplemental jurisdiction over the state claims against individuals who are no longer subject to federal law claims. 28 U.S.C. § 1367(c)(3). Because all the federal claims against Defendants Toledo, Vivoni, Pereira, Rivera–Gonzalez, Miro, Aviles–Hernandez, Torres–Hernandez, Rivera–Correa and Comas were dismissed, the Court will dismiss the supplemental state law claims against them without prejudice.

### Conclusion

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation in accordance with the body of this

Opinion and Order. Defendants' Motions for Summary Judgment are, therefore, **GRANTED** in part and **DENIED** in part as follows:

1. The Title VII (including retaliation claims), section 1981 and section 1983 claims against Defendants Haddock, Correa and Comas are dismissed, with prejudice;

2. The section 1983 claims against Defendants Toledo, Vivoni, Pereira, Rivera–Gonzalez, Miro, Aviles–Hernandez and Torres–Hernandez are dismissed for lack of personal involvement, with prejudice;

3. The pendent state law claims against Defendants Haddock and Correa are dismissed, with prejudice [10] and the pendent state law claims against Defendants Toledo, Vivoni, Pereira, Rivera–Gonzalez, Miro, Aviles–Hernandez, Torres–Hernandez, Rivera–Correa and Comas are dismissed, without prejudice.

4. The Commonwealth of Puerto Rico's request for summary judgment based on its defense under the *Faragher/Ellerth* doctrine is **DENIED.**

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

CAMILLE L. VELEZ RIVE, United States Magistrate Judge.

## INTRODUCTION

Plaintiff Diliana Hernández–Payero (hereinafter plaintiff Hernández), a female Puerto Rico Police Officer, filed this action seeking injunctive and monetary damages for discrimination on employment under Title VII of the Civil Rights Act, Civil Rights Act of 1991, § 703(a)(1), 42 U.S.C § 2000e–2(a)(1), under 42 U.S.C. § 1983, and for retaliation related to claims of sexual harassment. Pendent state law claims were also included, pursuant to Law 100 of June 30, 1959, 29 U.S.C. § 146, Law 69 of July 6, 1985, 32 L.P.R.A. § 1322, Law 17 of April 22, 1988 and for damages and torts under the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 and § 5142.

On April 29, 2005, defendants Miguel Pereira, Pierre Vivoni, Juan Cáceres Méndez, Jorge Rivera Correa, Miguel Angel Avilés Heredia, Manuel de Jesús Torres Hernández, William Miró Zayas, Víctor Rivera González, Juan Comas Valle and Pedro Toledo filed a Motion for Summary Judgment on the only remaining claim against them under § 1983 [1] based in that plaintiff's claim is time barred (Docket No. 137).

Co-defendants Carlos Castaño Morell, Carlos Haddock and Carmelo Correa also filed a separate Motion for Summary Judgment. In essence, these co-defendants state plaintiff's claim would be time barred absent a continuous violation. If no continuous violation exists, these co-defendants submit the last sexual harassment occurred on the last day co-defendant Castaño Morell worked at the Isla Verde Touristic Zone Precinct, that is, on April 2001. The applicable one-year statute of limitation would then have expired on April of 2002. This complaint was filed on September of 2002, and upon defendants' contention, over four (4) months

---

**10.** The state law claims against Haddock and Correa are dismissed with prejudice because the court adopts the Magistrate Judge's determination that the state law claims against them were time-barred. (Docket No. 194)

**1.** Dismissal of Title VII claims for lack of individual liability was already granted as to Pereira, Vivoni, Cáceres Méndez, Rivera Correa, Avilés Heredia, Torres Hernánez, Miró Zayas, Rivera González, Comas Valle and Toledo. Thus, Title VII claims only remain as to the Commonwealth of Puerto Rico and co-defendants Carlos Haddock and Carmelo Correa. (Opinion and Order, Docket No. 78).

after the applicable statute of limitations (Docket Nos. 144, 176).

Plaintiff submitted an opposition to both Motions for Summary Judgment claiming her allegations of a hostile work environment of sexual harassment and sex discrimination because of pregnancy, reflect a longstanding pattern of conduct for over three (3) years. It is plaintiff's contention genuine issues of material fact are in controversy that continued after co-defendant Castaño Morell was removed as Commander of the Isla Verde Precinct, which events were reported to other co-defendants and they failed to take action on her claims. Plaintiff avers co-defendant Castaño Morell, although removed as Commander, showed up at the facilities of the Isla Verde Tourist Police Station on October 10, 2001, after being instructed not to show up at plaintiff's working facilities. On that occasions plaintiff became very nervous and was crying. (Docket No. 156, 167).

On November 1, 2001, plaintiff filed a verified complaint with the Anti–Discrimination Unit of the Puerto Rico Department of Labor. On January 14, 2002, a copy of the complaint was sent to the Equal Employment Puerto Rico Office ("EEOC") and the EEOC notified plaintiff of her right to sue within ninety (90) days on July 2, 2002. Plaintiff avers that, since her federal complaint was filed on September 27, 2002, after receipt of the EEOC letter and well within the ninety-day period (90) of the right to sue letter, her Title VII claim is timely. Additionally, plaintiff considers timely her action pursuant to § 1983, under the one year statute of limitations, because the last incident of harassment occurred on October 10, 2001.

On July 21, 2005, co-defendants filed a Reply to Opposition to Summary Judgment. (Docket No. 176).[2] The parties have submitted the corresponding translations into the English language of exhibits attached to their motions.[3]

All matters referred to this Magistrate Judge on August 5, 2005 were stayed under the Soldiers' Relief Act[4] upon plaintiff's order for deployment and her departure to Iraq. (Docket No. 179). On February 23, 2006, the case was reinstated and the stay lifted by order of the Court, upon plaintiff being stationed in the continental United States (Docket Nos. 186, 191).

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it

---

**2.** Upon plaintiff having received her orders for active duty on August 1, 2005, the matter was subsequently stayed and no sur-reply to co-defendants' reply appears on record.

**3.** Docket Nos. 150–151, 153–155, 158, 164, 181–182.

**4.** *See* Soldier's Relief Act. 50 App. U.S.C.A. § 525.

potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only

be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun' "). n.

However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## II.  FACTUAL BACKGROUND

The following facts are undisputed:

Plaintiff Hernández joined the Puerto Rico Police Department ("PRPD") in 1992 and was assigned to work at the Isla Verde Touristic Zone Precinct.

On April 1999, co-defendant Castaño Morell began working as plaintiff Hernández' supervisor.

On April 4, 2001, plaintiff Hernández filed a sexual harassment claim with the Administrative Investigation Division of the PRPD.

Co-defendant Castaño Morell was transferred from the Isla Verde Touristic Zone Precinct shortly after plaintiff Hernández filed her claim.

On October 10, 2001, co-defendant Castaño Morell went to the Loíza Street Precinct, located in the same building of the Isla Verde Touristic Zone Precinct. He stayed at the parking area. There was no contact between plaintiff Hernández and Castaño.

On November 2001, plaintiff Hernández filed a claim of sexual harassment with the Puerto Rico Department of Labor Anti–Discrimination Unit and on January 2002 she filed before EEOC.

On January 2000, co-defendants Haddock and Correa were transferred from the Carolina Area Command Center.

## II. LEGAL DISCUSSION

### A. Individual Liability under Title VII, Section 1981 and State Law No. 100 as to co-defendants Haddock and Correa.

Co-defendants Haddock and Correa request dismissal of plaintiff Hernández' claims under Title VII, Section 1981(a) and state law No. 100 for lack of individual liability.

There is no need to discuss in detail the lack of individual Title VII liability as to co-defendants Haddock and Correa. This legal issue was discussed in this Magistrate Judge's Report and Recommendation on other co-defendants' Motion to Dismiss and in the Court's Opinion and Order for which, resting on similar legal grounds, dismissal should also be applicable to Haddock and Correa. (Docket No. 68 and 78).

Numerous cases in the District of Puerto Rico have already determined that no personal liability exists under Title VII and that individual defendants are not liable under Title VII. *See Rivera Sanchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 317 (D.Puerto Rico 2005); *Gomez Gonzalez v. Guidant Corp.,* 364 F.Supp.2d 112 (D.Puerto Rico 2005); *Vargas v. Fuller Brush Co. of Puerto Rico,* 336 F.Supp.2d 134, 138 (D.Puerto Rico 2004); *Velez–Sotomayor v. Progreso Cash & Carry, Inc.,* 279 F.Supp.2d 65 (D.Puerto Rico 2003); *Padilla Cintron v. Rossello Gonzalez,* 247 F.Supp.2d 48 (D.Puerto Rico 2003); *Nieves v. Puerto Rico,* 2003 WL 22316560 (D.Puerto Rico 2003); *Lopez Hernandez v. Municipality of San Juan,* 206 F.Supp.2d 243 (D.Puerto Rico 2002).[5]

This Magistrate Judge continuous to agree with numerous judicial reasoning within this District Court insofar that Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employers. Had Congress intended to hold individuals liable, it would have addressed the actions and conditions that would subject them to liability. *Canabal,* 48 F.Supp.2d at 96. Tasks mandated to employers under Title VII are applicable to the corporate entities and not to individual supervisors.[6]

Likewise as to herein co-defendants Haddock and Correa's claim for lack of individual liability under § 1981. The Opinion and Order issued by this Court has already expressed that, although the Court of Appeals for the First Circuit has not addressed individual liability under § 1981, the reasoning of *Sattar v. Unocal,* 829 F.Supp. 331 (N.D.Cal.1993) was found persuasive, and other co-defendants in this case were held not liable in their individual

---

**5.** *See also Olivo Gonzalez v. Teachers' Retirement Board,* 208 F.Supp.2d 163 (D.Puerto Rico 2002); *Castro Ortiz v. Fajardo,* 133 F.Supp.2d 143 (D.Puerto Rico 2001); *Mejias Miranda v. BBII Acquis'n Corp.,* 120 F.Supp.2d 157 (D.Puerto Rico 2000); *Canabal v. Aramark Corp.,* 48 F.Supp.2d 94, 95–98 (D.Puerto Rico 1999); *Acevedo Vargas v. Colon,* 2 F.Supp.2d 203, 205 (D.Puerto Rico 1998); *Pineda v. Almacenes Pitusa, Inc.,* 982 F.Supp. 88, 92–93 (D.Puerto Rico 1997); *Serapion v. Martinez,* 119 F.3d 982, 992 (1st Cir.1997); *Hernandez v. Wangen,* 938 F.Supp.

1052 (D.Puerto Rico 1996); *Anonymous v. Legal Services Corporation of Puerto Rico,* 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996).

**6.** *See Hernandez v. Wangen,* 938 F.Supp. at 1060 (*noting* that tasks such as maintaining records that shed light on potential unlawful employment practices and posting notices about the provisions of Title VII in conspicuous places on the work premises are undoubtedly tasks associated with corporate entities, not individuals.).

capacity under § 1981 (Docket No. 78, pp. 5–6).

As to Law 100, the Opinion and Order issued by this Court has already expressed that, under Law 100, the term "employer" is defined as: "any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises." P.R. Laws Ann. tit. 29, § 151 (1995). Since the Puerto Rico Police Department is an arm of the state and does not function as a business or private entity, Law 100 is not applicable. As Law 100 does not apply to the Puerto Rico Police Department, it would defy reason to hold the co-defendants liable in their official capacity under the same.[7]

Therefore, the Title VII, § 1981 and Law 100 claims against Haddock and Correa should be dismissed. (Docket No. 78). In fact, plaintiff Hernández agrees that the claims under Title VII, Section 1981 and state Law No. 100 as to Haddock and Correa should be dismissed (Docket No. 167, p. 3).

Accordingly, it is recommended that co-defendants Haddock and Correa's motion to dismiss plaintiff Hernández' Title VII, § 1981 and Law No. 100 claims against them be GRANTED.

## B. Title VII as to the Commonwealth of Puerto Rico.

### 1. Continuous Violation and Timeliness of the Title VII claim.

Plaintiff filed her civil suit within the ninety (90) day period upon receipt of her right to sue letter in compliance with administrative proceedings requiring to exhaust same. However, co-defendant the Commonwealth of Puerto Rico submits

---

7. We note that in those cases where Law 100 is applicable, the case of *Rosario Toledo v. Distribuidora Kikuet, Inc.*, 151 D.P.R. 634, 2000 WL 943550 (2000) should be taken into account. In *Kikuet*, the Highest Court held that, different from the most popular interpretation of Title VII, Puerto Rico's law against discrimination in the workplace, Law 100, does provide for the imposition of supervisor liability on the president of a corporation when he is the supervisor of the plaintiff, and is personally responsible for causing the plaintiff's injury for acts of sexual harassment. The Court's holding, in fact, was later extended, via reconsideration, to include not only the actual employer, or the owner and the president of the corporation, but also any other person responsible for the illegal conduct, without any distinction. *Pacheco Bonilla v. Tooling & Stamping, Inc.*, 281 F.Supp.2d 336 (D.Puerto Rico 2003) (under Law 100 liability extends not only to the actual employer, or the owner and the president of the corporation, but also to any other person responsible for the illegal conduct, without any distinction). *See also Rosado Sostre v. Turabo*

*Testing, Inc.*, 364 F.Supp.2d 144 (D.Puerto Rico 2005) (while First Circuit has not yet decided issue of individual liability under Title VII, individual employers or supervisors may be held personally liable under Puerto Rico's "Law 100," Title VII's local counterpart, for their discriminatory actions); *Miro Martinez v. Blanco Velez Store, Inc.*, 393 F.Supp.2d 108, 114 (D.Puerto Rico 2005) (when the defendant is the direct cause of sexual harassment conduct, Puerto Rico's law against discrimination in the workplace, Law 100, may provide for imposition of liability on individual employers or supervisors); *Vargas v. Fuller*, 336 F.Supp.2d at 134 (individual defendants who are supervisors and whose own actions of sexual harassment violate a plaintiff's rights are indeed liable under Law 100, as well as Laws 69 and 17). *See also, Diaz–Rivera v. El Dia, Inc.*, 2005 WL 2333645 (D.Puerto Rico 2005) (the Court applied the *Kikuet* rationale in a case of claims under Law 100 for discriminatory acts which do not amount to sexual harassment and found individual liability under Law No. 100).

plaintiff Hernández' surviving Title VII claim against it is time-barred. This averment is predicated in that the PRPD, plaintiff Hernández' employer, is a government agency which does not operate as a private business for which she was to file her complaint before the EEOC within one hundred and eighty days (180). An exception to this one hundred and eighty (180) days, as would be if the three hundred (300) days limitation applied, is a continuing violation. The Commonwealth of Puerto Rico states that a discrete event, such as co-defendant Castaño Morell's appearing at plaintiff's work on October 10, 2001, should not be considered to constitute a continuing violation (Docket No. 137).

The continuing violation doctrine "creates an equitable exception to the 300–day limitation when the unlawful behavior is deemed ongoing." *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998). Where the violation is "of a continuing nature, the charge of discrimination filed ... may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period...." *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir.1997). *Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 21 (1st Cir.2001).

[S]ome acts are imbricated, *i.e.* they involve an interlinked succession of related events or a fully-integrated course of conduct. There are acts and even gestures that although innocuous in themselves, when put in the larger context, may serve an aggrieved victim as a constant reminder of a harasser's interest in and control over him/her. Although the limitations clock generally starts with the commission of a discriminatory act, a true "continuing violation" rewinds the clock for each discrimi-

natory episode along the way. Thus, if the later violations in the series are within the prescriptive period, an employee may pursue them despite the fact that earlier acts, forming part and parcel of the same, have grown stale. *Mack v. Great Atlantic and Pacific Tea Company, Inc.*, 871 F.2d 179, 183 (1st Cir.1989).

As to plaintiff's actions being time barred, one must also consider the doctrine set forth in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) which holds that a complaint alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *See Vega v. Hernandez*, 381 F.Supp.2d 31, 38 (D.Puerto Rico 2005).

A public employer who fails to make an adequate investigation of an employee's sexual harassment complaint can be held liable under Title VII for hostile work environment created by another of its employees under negligence theory, without regard to effectiveness of employer's remedial action. *See O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir.2001) (holding liability for claims under Civil Rights Act of 1964 and remedial administrative procedures, which emphasized going through channels, providing no mechanism to female firefighter for airing grievances involving conduct of superiors who were in chain of command).

The Commonwealth of Puerto Rico claims co-defendant Castaño Morell's appearance at plaintiff's work on October 10, 2001 was a discrete act not to be considered a continuing violation (Docket No. 137). The Commonwealth of Puerto Rico submits co-defendant Castaño Morell had been assigned by October 2001 to work with Capt. Edwin Torres Ortíz as a working partner. An investigation on October

10, 2001, required him to interview the Commander of the Loíza Street Precinct, where the Isla Verde Touristic Precinct is also housed and occupies a small space in the building facilities. Castaño Morell stayed at the parking lot. Plaintiff Hernández had no visual contact with co-defendant Castaño Morell. Deft's statement ¶¶ 95–97.

In turn, plaintiff Hernández avers that the visit by Castaño Morell on October 10, 2001 was not a discrete act but part of a pattern of harassment and stalking which constitutes a continuing violation. In support of her assertion, plaintiff submits the following facts:

Plaintiff submits to acts of harassment and stalking by her direct supervisor, Castaño Morell, at the Isla Verde Police Precinct for a period of three (3) years. Specific evidence of statements and acts by Castaño Morell amounting to a sexually offensive conduct, as well as subsequent acts of retaliation in employment[8], were itemized in the amended complaint, plaintiff's sworn statement in opposition and deposition testimonies. Plaintiff notified at all times to co-defendant Castaño Morell that his conduct was not acceptable. Written complaints and meetings were initially submitted to Haddock as to these events from 1999 through at least April of 2001.

On April 4, 2001, a meeting was held by Rivera Correa with personnel from the Isla Verde Touristic Precinct to which around thirty (30) individuals and plaintiff Hernández attended. In this meeting, Rivera Correa informed his decision to remove Castaño Morell from the precinct. Plaintiff's statement ¶¶ 35–36; depo pp. 11–12.

On April 2001, Rivera Correa instructed plaintiff to visit the Administrative Investigation Division to file a complaint. Plaintiff's statement ¶ 40.

Co-defendant Comas replaced Castaño Morell shortly thereafter at the Isla Verde Touristic Precinct. Plaintiff's statement ¶ 37; depo p. 87.

On April of 2001, after Castaño Morell was removed from the precinct, plaintiff advised Comas that Castaño Morell was stalking her in his own personal vehicle and she had seen him. This incident took place on July 1, 2001. Plaintiff's statement ¶ 46, 47 and 48.

Co-defendant Comas assigned to plaintiff a portable communication radio and its charger unit and arranged coordination with another agent to commute together with plaintiff Hernández from work to home and *vice versa* and informed plaintiff about how to deal with sexual harassment situations. Plaintiff's statement ¶¶ 41–42, 47; depo pp. 15–16, 92.

On July 24, 2001, plaintiff filed a criminal complaint against co-defendant Castaño Morell and visited the District Attorney who found, without interviewing plaintiff, there was no cause for the filing of criminal charges. *Id.* ¶ 49.

Plaintiff Hernández was not sexually harassed at the work place after the departure of Castaño Morell from the Isla Verde Touristic Precinct. Plaintiff's statement ¶¶ 43; depo pp. 18–16, 22.

On October 10, 2001, Castaño Morell showed up at the Isla Verde Touristic Precinct notwithstanding instructions he was not supposed to visit plaintiff's working facilities. On said date, Comas informed Castaño Morell and his fellow officer Capt. Edwin Torres that Castaño Morell was not supposed to go inside the precinct because plaintiff Hernández was working inside, as

---

8. The specific acts of retaliation in employment claimed by plaintiff will be mentioned later in this Report and Recommendation in Parts "C" and "D".

well as provided some details on the pending complaint. On account of this conversation, witnessed also by the Loíza Precinct Commander, Jorge Ortíz Aponte, Castaño Morell stayed in the parking lot area. Comas had to calm down plaintiff Hernández who became very nervous and crying. Plaintiff's statement ¶ 51; Comas' depo p. 48; Exhibit 21, letter by Comas to Lt. Cor. Jorge Rivera Correa dated November 5, 2001.

The court finds plaintiff has produced evidence sufficient to establish the existence of a continuing violation. For example, plaintiff refers to acts of harassment and stalking by her direct supervisor, Castaño Morell, at the Isla Verde Police Precinct for a period of three (3) years until he was removed on April 2001. On July 1, 2001, three (3) months after Castaño Morell was removed from the Loíza precinct, he was still stalking and harassing plaintiff in his own car. In addition, the reason why Castaño Morell did not enter plaintiff's working facilities on October 21, 2001 was because Comas intervened and Castaño Morell then decided to remain in the parking lot. Moreover, by the time of codefendant Castaño Morell's last act on October 21, 2001, no action had been taken on plaintiff's administrative complaints. Therefore, co-defendant Castaño Morell may have still felt free to ruminate on the aggrieved victim clothed with unfettered sanctions, thus creating disputed evidence as to motive and intent.

Accordingly, the actions of Castaño Morell on October 21, 2001 could be construed by a jury as part and parcel of her sexual harassment and discrimination claims. Hence, there is evidence in this case that would support a jury finding that defendants engaged in a continuous violation and that the visit by Castaño Morell on October 21, 2001 was part of that continuing violation.[9]

In view of the foregoing, disposal of this case at summary judgment on grounds that plaintiff's actions are time barred would be improper. *Sabree v. United Broth. of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 399 (1st Cir.1990) citing *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir.1980) ("Courts are reluctant to dismiss by summary judgment Title VII discrimination suits where ... motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers."); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755(3d Cir.1995) (there is a natural affinity between the hostile work environment theory and the continuing violation doctrine. Thus, a court should not hastily dismiss on timeliness grounds a harassment claim where a continuing violation is alleged); *O'Rourke v. City of Providence*, 235 F.3d at 727–728.

Accordingly, it is recommended that the Commonwealth of Puerto Rico's request for summary judgment of the Title VII claims on timeliness grounds be DENIED.

### 2. The Faragher/Ellerth Doctrine Defense.

The Commonwealth of Puerto Rico also raises that since it lacks a tangible employ-

---

9. The burden is on plaintiff to establish that there has been a continuing violation. *See LaBeach v. Nestle Co.*, 658 F.Supp. 676, 686–87 (S.D.N.Y.1987) ("[P]laintiff must establish a present and ongoing violation...."). Because plaintiff bears the burden of proof on this issue, she must produce sufficient evidence for a jury to find that there has been a continuing violation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To establish a continuing violation, plaintiff " 'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute." *Johnson v. General Elec.*, 840 F.2d 132, 137 (1st Cir. 1988) quoting *Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984); *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994).

ment action against plaintiff, it should benefit from the defense under *Faragher* and *Ellerth*. To substantiate entitlement to such defense, the Commonwealth submits a statement of facts regarding its policy against sexual harassment, aggrieved employees receipt of information on how to file an harassment complaint, training provided under said policy, plaintiff's knowledge about its existence, and action taken to transfer co-defendant Castaño Morell from the Isla Verde Touristic Precinct by April of 2001, where plaintiff Hernández then worked.

*Faragher* entitles an employer to an affirmative defense if it shows that it exercised reasonable care to prevent and correct harassing behavior and that the employee unreasonably failed to take advantage of available remedies. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807–808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Under anti-discrimination provisions of Title VII, an employer is subject to vicarious liability to victimized employee for an actionable hostile environment created by a supervisor with immediate or successively higher authority over employee. However, when no tangible employment action is taken, employer may raise an affirmative defense to liability or damages, subject to proof by preponderance of evidence and comprising two (2) necessary elements: (a) that employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by employer or to avoid harm otherwise. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

The Commonwealth submits a statement of facts in support of summary judgment on this issue of *Faragher*. (Docket No. 136). Succinctly, the Commonwealth

states a General Order in the PRPD was issued since April 27, 1988 to channel sexual harassment complaints and the administrative procedures to be followed by an aggrieved employee. Deft's statement ¶¶ 1–3.

This General Order was to be discussed with cadets and frequent training courses were given at the PRPD on sexual harassment procedures. *Id.* ¶ 12.

On March 2000, then Police Superintendent Pedro Toledo instructed around March 2000 to post the General order at bulletin boards in every working area. *Id.* ¶ 54

A Training Institute held training on the General Order and sexual harassment to ranking police officers using external resources and lecturers throughout the years 1991–1994. *Id.* ¶¶ 13–25.

A new sexual harassment regulation was implemented by May 6, 2002 and then Police Superintendent Miguel Pereira instructed the Training Institute to develop sexual harassment training to all supervisory personnel. Deft's statement ¶¶ 26–29.

On May 15–23, 2002 (by the date herein plaintiff Hernández states she had constructively resigned, May 23, 2002), a new series of sexual harassment trainings were being held at the PRPD. Deft's statement ¶ 29 a-ll.

Co-defendants Castaño Morell, Torres, Avilés and Miró, among others, attended a staff meeting which contained in its agenda discussion of new sexual harassment complaints on June 2, 2000. *Id.* ¶¶ 59–60.

On December 1992, plaintiff Hernández joined the Police Academy and graduated on July of 1993. Deft's statement ¶ 31; Hernández' depo p. 10.

On April 10, 2000 and August 29, 2000, plaintiff Hernández received orientation

about the General Order at the local academy. *Id.* ¶¶ 56, 65.

The Commonwealth of Puerto Rico submits in its statement of facts reference to other instances where recent actions were taken on sexual harassment subsequent to May 23, 2002, when plaintiff had already submitted her alleged constructive resignation. These are deemed not relevant to discussion in the instant case, *i.e.* regulations on sexual harassment complaints approved on August of 2002; memo of March 24, 2004; letters June 2002. *Id.* ¶¶ 127–135; Docket No. 136, Exhibits 53–58.

Notwithstanding the Commonwealth of Puerto Rico's contention, the mere existence of a grievance procedure and a policy against discrimination, coupled with employee's failure to invoke that procedure, was held not necessarily to insulate an employer from liability. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

On one hand defendant, the Commonwealth of Puerto Rico, submits no retaliatory or adverse employment action was taken against plaintiff Hernández as of the date this lawsuit was filed. On the other hand, plaintiff Hernández claims she submitted a constructive resignation letter on May 23, 2002, precisely because no action or sanction had been taken by defendants on her administrative claim against Castaño Morell.

In opposition to the defense under *Faragher*, plaintiff Hernández submits in opposition the training on sexual harassment issues for high ranking officers at the PRPD was on a voluntary basis and co-defendant Castaño Morell admitted that no training on sexual harassment was given to him. Plaintiff's statement 7; Castaño Morell's depo p. 31; Docket No. 156.

In addition, plaintiff Hernández proposes she immediately complained in writing to the Carolina Area Commander, defendant Correa, following the chain of command established as of July 13, 1999. Hernández' depo. pp. 88–89, 111, 117. No action was taken of said complaint. It was not until a meeting held on April 4, 2001, with co-defendant Rivera Correa, that co-defendant Castaño Morell was removed from his position of the Isla Verde Touristic Precinct and plaintiff Hernández was advised by defendant Rivera Correa to attend the Administrative Investigation Division of the Carolina Police Area to file a complaint. Plaintiff's statement ¶¶ 34–37; Hernández' depo pp. 6–7, 10–12, 44.

The *"Faragher/Ellerth* defense" consists of two (2) elements which, if proven, permit the employer to avoid vicarious liability for supervisor's creation of hostile work environment; first, **employer must show that it exercised reasonable care to prevent and correct promptly the harassment,** and second, employer must show that employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by employer or to avoid harm otherwise (emphasis supplied). *See Noviello v. City of Boston*, 398 F.3d 76 (1st Cir.2005).

There is a disputed fact by plaintiff that, regardless of the PRPD claims of adequate training on how to channel sexual harassment complaints, in actual practice the same was not followed. The training to ranking officers was an invitational basis and to selected officers. Co-defendant Castaño Morell admitted he never received any formal training on sexual harassment. Plaintiff's statement ¶ 7; Castaño Morell's depo p. 31.

Plaintiff also submits there was an incident at a monthly academy verbal presentation or lecture about sexual harassment and the General Order in which co-defendant Castaño Morell took the General Order away from one Lt. Bosques and did

not allow the presentation to be conducted. Hernández' depo. p. 48.

Additionally, plaintiff avers the Administrative Investigation Division of the Carolina Police Area took some eleven (11) months on plaintiff Hernández' investigation. Plaintiff was not kept informed on same and, as of the present date, the final outcome is still pending. *Id.*

As such, plaintiff Hernández submits the employer's request for summary judgment on affirmative defense of *Faragher/Ellerth* should be denied since a jury could reasonably conclude the Commonwealth of Puerto Rico displayed deliberate indifference to co-defendant Castaño Morell's conduct of harassment and stalking against plaintiff Hernández. Moreover, plaintiff Hernández has raised genuine issues of fact in controversy as to the Commonwealth of Puerto Rico's propositions to support its claim to the *Faragher/Ellerth* defense that preclude summary judgment.

Finally, we note that an employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer. *See Faragher; see also Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 21 (1st Cir.2003). To the contrary, federal law exerts considerable pressure on employers to make certain that employees refrain from sexually harassing conduct. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (explaining that "Title VII is designed to encourage the creation of anti-harassment policies and effective [complaint] mechanisms" for reporting harassing conduct). Prudent employers will compel harassing employees to cease all such conduct and will not, even at a victim's request, tolerate inappropriate conduct that may, if not halted immediately, create a hostile environment.

*Faragher,* 524 U.S. at 787, 118 S.Ct. at 2283.

As such, it is recommended that the Commonwealth of Puerto Rico's *Faragher/Ellerth* doctrine defense be DENIED because there is a genuine issue of fact as to whether defendants' remedial measures were adequate and prompt and if plaintiff unreasonably failed to take advantage of available administrative resources, for which resolution of these issues is best left for a trier of facts.

Finally, we touch upon briefly on constructive discharge. Co-defendants claim that plaintiff's resignation cannot be considered a constructive discharge. Plaintiff argues otherwise since no action was taken subsequent to a series of prior written complaints and meetings as to Castaño Morell's behavior and the investigation on her complaint took over eleven months, without any disciplinary or sanction having been taken. (Docket No. 156, Plaintiff's statement of facts in opposition to ¶¶ 39, 85–86.)

It is still unresolved in this district whether a constructive discharge is an adverse employment action. It is yet to be decided whether a constructive discharge is a tangible employment action within the meaning of *Ellerth/Faragher.* Under *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), constructive discharge, when precipitated by a supervisor's official act, may be viewed as a tangible employment action. In the Seventh Circuit, *see Wolf v. Northwest Indiana Symphony Soc'y,* 250 F.3d 1136, 1142 (7th Cir.2001); *Mosher v. Dollar Tree Stores, Inc.,* 240 F.3d 662, 666–67 (7th Cir.2001). The approaches of the circuits that have confronted the issue have varied somewhat in rationale. The Third Circuit in *Suders v. Easton,* 325 F.3d 432 (3d Cir.2003), determined that a constructive discharge should be consid-

ered a tangible employment action for purposes of the *Ellerth/Faragher* analysis. The Eighth Circuit also has followed this course, although it has not set forth its rationale in great detail. *See, e.g., Jackson v. Arkansas Dep't of Educ.,* 272 F.3d 1020, 1026 (8th Cir.2001). Like the Third Circuit, the Second Circuit has faced the issue squarely, but has determined that a constructive discharge cannot be considered a tangible employment action for purposes of Title VII. *See Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283 (2d Cir. 1999).

The First Circuit has taken a middle ground and held that "[b]ecause the conduct differs from case to case," there is "no reason to adopt a blanket rule one way or the other." *Reed v. MBNA Mktg. Sys., Inc.,* 333 F.3d 27, 33 (1st Cir.2003) (there might indeed be cases in which official actions by the supervisor-e.g., an extremely dangerous job assignment to retaliate for spurned advances-could make employment intolerable); *see also Robinson v. Sappington,* 351 F.3d 317, 334 (7th Cir. 2003).

However, because it is found that the Commonwealth of Puerto Rico has failed to establish the first prong of the *Ellerth/Faragher* defense, the acts taken to prevent and correct the harassment and these acts being prompt, there is no need to discuss constructive discharge issues not raised by the parties.[10]

**C.   Prima Facie Case on Retaliation.**

Like other discrimination claims, in the absence of direct evidence, a plaintiff must first make a *prima facie* claim of retaliation. To present a *prima facie* case of retaliation, a plaintiff must show (1) that he/she engaged in protected activity, (2) that he/she suffered an adverse employment action, and (3) that there was a causal nexus between the protected activity and the firing. *Bishop v. Bell Atl. Corp.,* 299 F.3d 53, 58 (1st Cir.2002); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 262 (1st Cir.1999); *Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998). Once plaintiff makes a *prima facie* showing, the burden shifts to defendant to articulate legitimate, non-retaliatory reasons for his/her employment decisions. *See Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996). If defendants do so, the ultimate burden falls on plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from defendants' retaliatory animus. *Fennell,* 83 F.3d at 535 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

According to co-defendants Pereira, Vivoni, Cáceres Méndez, Rivera Correa, Avilés Heredia, Hernández, Miró Zayas, Rivera González, Comas, Toledo and the Commonwealth of Puerto Rico, plaintiff Hernández has failed to established a *prima facie* case of retaliation since there was no adverse employment action after co-defendant Castaño Morell was removed from the Isla Verde Touristic Precinct nor on account of plaintiff having made a sexual harassment complaint.   Co-defendants

---

**10.**   Taking into account that no administrative action was taken as to plaintiff's complaints against Castaño Morell and his appearance at plaintiff's work station, notwithstanding instructions to the contrary after his removal from his supervisory position, jointly with plaintiff Hernández' reaction of becoming very nervous, crying and needed to be calmed

down by Juan Comas, there is a disputed issue of fact that although subjective, a jury may hold—as reasonably supported by previous background conduct—that plaintiff felt she had no other resort than to constructively resign to avoid co-defendant's stalking behavior.

also argue the request for plaintiff to turn her handgun thereafter cannot be construed as harassment since she had been absent from employment for more than thirty (30) days as prescribed in the applicable regulation (Docket No. 136, ¶ 89, Docket No. 137, p. 16).

Plaintiff Hernández in opposition states that upon a continuous violation rationale there is evidence of numerous previous acts by co-defendant Castaño Morell which resulted in retaliation because of her refusal to accept his sexual advances, for engaging in the filing of administrative complaints and/or grievances, to wit; specific acts, demeaning behavior, verbal confrontation, comments as to plaintiff's husband being in the military and alleged sexual promiscuity—animated by codefendant Cáceres—, changes in shift and extended work hours regardless of a request for reasonable accommodation due to her pregnancy, in addition to a physical assault. The resulting hostile work environment furthered by non-action of others co-defendants in the chain of command and/or supervisors resulted, within this continuous violation, in the need for constructive resignation notified by letter of May 23, 2002.

The record is fully supported as to plaintiffs' *prima facie* case of retaliation and hostile work environment, in addition to her sexual harassment claims against Castaño Morell, as to all co-defendants, except for Rivera Correa and Comas.[11] A public employer that fails to make an adequate investigation of an employee's sexual harassment complaint can be held liable under Title VII for hostile work environment created by another of its employees under negligence theory, without regard to effectiveness of employer's remedial ac-

tion. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; *see* *O'Rourke*, 235 F.3d at 713.

To establish her *prima facie* case plaintiff refers to acts of harassment and stalking by her direct supervisor, Castaño Morell, at the Isla Verde Police Precinct for a period of three (3) years. Co-defendants Haddock and Correa were direct supervisors of co-defendant Castaño Morell. Specific evidence of statements and acts by Castaño Morell amounting to a sexually offensive conduct, as well as subsequent acts of retaliation in employment, were itemized in the amended complaint, plaintiff's sworn statement in opposition and deposition testimonies. Plaintiff notified at all times to co-defendant Castaño Morell that his conduct was not acceptable. Written complaints and meetings were initially submitted to Haddock as to these events from 1999 through at least April of 2001. It was by April 4, 2001, that co-defendant Rivera Correa took action to remove defendant Castaño Morell from the Isla Verde Precinct.

There is no controversy of facts that co-defendants Rivera Correa and Comas took immediate remedial action once plaintiff Hernández informed about the work discrimination and co-defendant Castaño Morell's conduct. Thus, for summary judgment and events in support of plaintiff's *prima facie* case on co-defendants Rivera Correa and Comas, it is uncontroverted that:

Towards the first days of April of 2001, plaintiff Hernández called the Carolina Area Police Commander Rivera Correa to talk to him urgently about the situation with Castaño Morell. The secretary provided plaintiff with his cell phone and upon

---

**11.** Undisputed genuine issues of material facts to support summary judgment as requested were presented as to Rivera Correa and Comas establishing immediate remedial actions being taken upon plaintiff Hernández complaints to these Police Officers.

conversations she was told to visit him the following day. Present at that meeting were plaintiff Hernández, her husband, and co-defendant Avilés Heredia. Plaintiff's statement ¶¶ 32–33; Hernández depo pp. 6–7.

Rivera Correa gave instructions to obtain all related documents and for co-defendant Avilés Heredia to instruct the Carolina Area Deputy Commander to arrange plaintiff's work shift. Plaintiff's statement ¶ 34; depo at 10.

At the meeting held by Rivera Correa with personnel from the Isla Verde Touristic Precinct on April 4, 2001, attended by some thirty (30) individuals and plaintiff Hernández, Rivera Correa informed his decision to remove Castaño Morell from the precinct. Plaintiff's statement ¶¶ 35–36; depo pp. 11–12.

Rivera Correa instructed plaintiff in April of 2001 to visit the Administrative Investigation Division to file a complaint. Plaintiff's statement ¶ 40.

Co-defendant Comas replaced Castaño Morell shortly thereafter at the Isla Verde Touristic Precinct. Plaintiff's statement ¶ 37; depo p. 87.

On April of 2001, Comas assigned to plaintiff a portable communication radio and its charger unit and arranged coordination with another agent to commute together with plaintiff Hernández from work to home and *vice versa* and informed plaintiff about how to deal with sexual harassment situations. Comas assisted plaintiff upon information that Castaño Morell was stalking plaintiff Hernández in his own personal vehicle and she had seen him. Plaintiff's statement ¶¶ 41–42, 47; depo pp. 15–16, 92.

Plaintiff Hernández was not sexually harassed at the work place after the departure of Castaño Morell from the Isla Verde Touristic Precinct. Plaintiff's statement ¶¶ 43; depo pp. 18–16, 22.

After the last incident by Castaño Morell, when he showed up at the Isla Verde Touristic Precinct on October 10, 2001, notwithstanding instructions he was not supposed to show up at plaintiff's working facilities, Comas informed Castaño Morell and his fellow officer Capt. Edwin Torres on said date that Castaño Morell was not supposed to go inside the precinct since plaintiff Hernández was working inside, as well as provided some details on the pending complaint. On account of this conversation, witnessed also by the Loíza Precinct Commander, Jorge Ortíz Aponte, Castaño Morell stayed in the parking lot area. Comas had to calm down plaintiff Hernández who became very nervous and crying. Plaintiff's statement ¶ 51; Comas' depo p. 48; Exhibit 21, letter by Comas to Lt. Cor. Jorge Rivera Correa dated 11–5–2001.

On November 1, 2001, plaintiff filed a complaint before the Department of Labor and Human Resources Anti–Discrimination Unit. Neither Comas or Rivera Correa took any adverse decision towards plaintiff Hernández. Plaintiff's statement ¶¶ 52–53; Hernández' depo p. 35.

Plaintiff Hernández was absent from her work since January 14, 2002 until the date of her resignation letter, May 23, 2002. Hernández' depo p. 71.

Plaintiff Hernández was unarmed at the end of March or the beginning of April of 2002. *Id.* p. 72.

Plaintiff Hernández best knowledge is that PRPD's regulations state that any police officer absent for more than thirty (30) consecutive days must be disarmed. *Id.* p. 72–74.

It is thus shown and no controversy as to genuine issues of material fact exists that there is no *prima facie* case as to co-

defendants Rivera Correa and Comas for retaliation, sexual harassment, sex discrimination or hostile work environment. Thus, it is recommended that summary judgment be GRANTED only as to Rivera Correa and Comas for plaintiff's failure to establish a *prima facie* case of retaliation against them.[12] Accordingly, dismissal of all federal claims against Rivera Correa and Comas is recommended.

Nonetheless, plaintiff has established a *prima facie* case as to the remaining co-defendants by submitting acts of co-defendant Castaño Morell, as well as to lack of action of Puerto Rico Police supervisors and superintendents that resulted in a hostile work environment and retaliation. Thus, the burden shifts back to defendants to articulate legitimate, non-retaliatory reasons for their employment decisions.

Co-defendants submit that their action in requesting plaintiff to turn in her handgun and being disarmed, because of her thirty (30) day absence from active duty, does not amount to retaliation. Mainly, co-defendants' no-retaliation defense and lack of a *prima facie* case rests in their contention that no adverse employment action was taken against plaintiff and that her letter of resignation should not be construed as a constructive discharge.

Thus, taking this into account and there being a controversy of genuine issues of material fact regarding the constructive discharge and the continuous violation (as previously explained), relating back the hostile work environment and discrimination claims, it is recommended that summary judgment be DENIED as to remaining co-defendants.

### D. Discrimination under § 1983.

Co-defendants Castaño Morell, Haddock and Correa request dismissal of plaintiff Hernández' § 1983 for being time-barred (Docket No. 144). It is their contention plaintiff Hernández had knowledge of sexual harassment as of May of 1999 and the one-year limitation to file action expired by September 27, 2002, when she filed this federal claim. Co-defendant Castaño Morell was transferred from the Isla Verde Touristic Zone Precinct on April 2001, and if the last day of discrimination accrued as of said date, plaintiff's limitation period would then have expired by April of 2002.

Insofar as co-defendants Haddock and Correa, they claim they were transferred from the Carolina Area by January of 2001. Therefore, they claim that had they failed to investigate plaintiff's complaints against Castaño Morell, a cause of action as to them would have expired one year after their transfer, almost a year and a half after plaintiff Hernández filed this federal complaint.

Co-defendants have also argued in the alternative against a continuing violation doctrine. There is an equitable exception to limitation when an unlawful conduct is ongoing. However, it is co-defendants' contention that Castaño Morell's visit to the Loíza Precinct on October 2001 cannot be construed as discriminatory or as sexual harassment that may reach back to anchor previous discriminatory acts, if taken as true, within the limitation statute. Defendants equate Castaño Morell's action on October 2001 as neutral behavior citing *Provencher v. CVS Pharmacy*, 145 F.3d 5 (1st Cir.1998).

---

**12.** Remaining co-defendants have not presented in their discussion the absence of genuine issues of material facts to support their request for summary disposition of their claims. As such, all plaintiff's averment, statements, deposition testimony and statements are uncontroverted as to them and summary judgment on these co-defendants' generalized claim of lack of *prima facie* case seems improvident.

Since state law claims for torts under Puerto Rico Article 1802 and 1803 also refer to a one-year limitation period, pursuant to the time frame above developed co-defendants submit these claims would also be time-barred.

In opposition, plaintiff Hernández argues that upon examination of prior conduct of discriminatory acts, wherein the events that predated the limitation period are alleged to be part of the same series of acts, a rational jury may be able to find she was subject to an ongoing pattern of discrimination based on sex during the spanned three (3) years of co-defendant Morell's harassing conduct. Likewise as to co-defendants Haddock and Correa for their failure to investigate her claims and lack of adequate training on how to channel sexual harassment complaints, resulting in a hostile work environment and discrimination for making a claim. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (the jury may consider evidence of prior conduct outside the limitation period as relevant background evidence to determine defendant's liability of actionable hostile work environment practice).

### 1. Timeliness of plaintiff's § 1983 claims as to co-defendant Castaño Morell.

As prior conduct, plaintiff Hernández states she was introduced to co-defendant Castaño Morell on April 1998, at which time he grabbed his balls and genitals and tried to shake her hand while looking at her from head to toe, undressing her with his eyes. Plaintiff's statement of fact ¶ 8. On May 10, 1999, co-defendant Castaño Morell welcomed plaintiff with a sexually suggestive tone of voice with a statement "We are going to jointly work together all night ... I hope you do not mind", while at the same time he caressed his tongue with a pen in and out of his mouth and rubbing hands in front of his pants where his genitalia is located. Castaño–Morell would look at plaintiff Hernández' breast, legs and from head to toe undressing her with his eyes. Statement of facts ¶¶ 9, 10, 11. Plaintiff refused to be left alone with her supervisor making Lt. Castaño Morell aware she did not want to work alone with him at the precinct. *Id.*

Castaño Morell began to retaliate against plaintiff Hernández around May 20, 1999. He referred to a sore on plaintiff's mouth out loud and in front of other co-workers with sexual overtones and as caused by a sexually transmitted disease. *Id.* ¶¶ 11, 12, 13. This verbal abuse was joined by other ranking officials, including Juan Cáceres, Director of the Loíza Street Precinct, who also made undesired comments, making implied suggestions plaintiff's sore was a result of an unfaithful husband and since plaintiff's Hernández husband was in the military they were known to be sexually promiscuous. Plaintiff's Statement ¶¶ 11, 15.

Plaintiff filed her first complaint against Castaño Morell on May 21, 1999, with copy to co-defendant Haddock on July 13, 1999. *Id.* ¶ 8. Plaintiff Hernández informed Castaño Morell about the complaint and asked him to stop his conduct, to which he responded if she did not like his conduct it was her problem and she could leave, at the same time he rubbed his genital area. *Id.* 17. Plaintiff Hernández suffered chest pains and fell sick and was taken to the medical dispensary after losing consciousness.

By May 2000, plaintiff Hernández' work schedule was arranged by Castaño Morell so that she would have less than eight (8) hours of rest between shifts. Subsequently while being pregnant plaintiff Hernández' working hours were increased from

eight (8) to twelve (12) hour shifts and Castaño Morell stated that being pregnant was no excuse to comply with her responsibilities. Plaintiff's statement of facts ¶¶ 22–27.

By June of 2000, upon plaintiff Hernández requesting leave to travel and following on her request, Castaño Morell stated to her "Pregnant women all you do is create problems and that is why women are worth nothing", while rubbing his genital area. At the end of October 2000, while making derogatory remarks about policewomen being only good to be pregnant and God was punishing him by having policewomen in charge, plaintiff Hernández submits Castaño Morell physically assaulted her with his abdomen and chest while moving forward toward her, causing plaintiff to move back with the impact, losing her balance and almost causing her to fall down. *Id.* ¶¶ 26, 27.

By November 2000, upon plaintiff Hernández requesting reasonable accommodation because of her pregnancy, Castaño Morell aggressively told her she had to sign in under his name and work at the main dispatch area, forcing her to work twelve (12) hours shifts while she began with labor pain. When requesting permission to leave, Castaño Morell refused stating that if she knew what was best for her she would stay as scheduled. *Id.* ¶ 29.

By April 4, 2001, at a meeting with personnel of the Isla Verde Touristic Precinct, plaintiff Hernández expressed concerns to co-defendant Rivera Correa about Castaño Morell's behavior. Codefendant Rivera Correa took the decision at the end of the meeting to remove Castaño Morell from the Precinct. Co-defendant Comas replaced defendant Castaño Morell shortly thereafter. Plaintiff's statement ¶¶ 38, 40.

After co-defendant Castaño Morell was removed as Commander of the Isla Verde Precinct, plaintiff Hernández felt she was chasing and following her, feeling she was stalked, and reported this incident to co-defendant Comas. The incidents took place on July 1, 2001. *Id.* ¶¶ 46, 47, 48. Plaintiff filed a criminal complaint against co-defendant Castaño Morell on July 24, 2001 and visited the District Attorney who found, without interviewing plaintiff, there was no cause for the filing of criminal charges. *Id.* ¶ 49. On October 10, 2001, co-defendant Castaño Morell showed up at the facilities in which the Isla Verde Tourist Precinct is located, notwithstanding instruction that he was not supposed to show up at plaintiff's working facilities. Co-defendant Comas indicated that when Castaño Morell showed up plaintiff became very nervous, was crying, and had to be calmed down. *Id.* ¶ 51. Plaintiff Hernández also submits co-defendant Castaño Morell stayed at the parking lot upon instructions given by Capt. Edwin Torres Ortíz after speaking with Comas thus raising a controversy of facts on whether Castaño Morell went beyond the Loíza Street Precinct parking lot and that the Isla Verde Touristic Precinct occupies a small space within the same building facilities.

Plaintiff Hernández, who had filed a previous internal complaint with her employer's administrative offices, filed a verified complaint on November 1, 2001 with the Puerto Rico Department of Labor Anti–Discrimination Unit. Plaintiff's statement ¶ 52. On January 14, 2002, the EEOC was forwarded copy of the employment discrimination and assigned a number. *Id.* ¶ 55.

Plaintiff had filed her administrative complaint on April 4, 2002, with the Administrative Investigation Division of the Carolina Police Area Headquarter. It was the first time said office had learned about plaintiff Hernández' allegations. The investigation that ensued took approximately eleven (11) months. *Id.* ¶¶ 54, 86.

Plaintiff Hernández states she submitted her constructive resignation letter on May 23, 2002, since by that time defendants had failed to take any action as to her claims. On July 2, 2002, the EEOC notified plaintiff of termination of the processing of the discrimination charge and of her right to sue within ninety (90) days from receipt of notice. Plaintiff's statement Exhibit 36; Docket No. 156.

Plaintiff filed her federal cause of action on September 27, 2002, within ninety (90) days of her letter of notice of right to sue. *See* Complaint; Amended Complaint. Docket Nos. 1, 4.

Plaintiff argues defendants knew of plaintiff Hernández' discrimination claims as of May 21, 1999, when copy of her first complaint against Castaño Morell was prepared and a copy was submitted to co-defendant Haddock on July 13, 2001. Defendants also knew by April 4, 2001, through plaintiff Hernández' administrative complaint, of continuous acts of discrimination. The investigation report on the administrative complaint was issued on March 20, 2002, yet administrative proceedings against codefendant Castaño Morell are still pending.

Contrary to Title VII claims, civil rights actions brought forth pursuant to § 1983 of the Civil Rights Act of 1991 do not have a specific statute of limitations. *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 41–42 (1st Cir.1990). Consequently, courts have been encouraged to, and must apply, the state's statute of limitations which is most appropriate to the particular § 1983 claim, *Rivera Sanchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 307 (D.Puerto Rico 2005), which in Puerto Rico is the statute of limitations provided for personal injury actions, to wit, one (1) year. *See*

*Ruiz–Sulsona v. Univ. of Puerto Rico,* 334 F.3d 157, 160 (1st Cir.2003). *Vega v. Hernandez,* 381 F.Supp.2d 31, 40 (D.Puerto Rico 2005). *See also Hardin v. Straub,* 490 U.S. 536, 538–39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

As previously explained, while discussing the timeliness of the Title VII claims, the court finds that plaintiff has produced evidence sufficient to establish the existence of a continuing violation. Accordingly, disposal of the § 1983 claims at summary judgment on the grounds that plaintiff's actions are time barred would be improper.

In view of the foregoing, and there being sufficient evidence presented by plaintiff of a continuous violation, based on motive and intent, it is recommended that Castaño Morell's request for dismissal of plaintiff Hernández' § 1983 for being time-barred be DENIED.[13]

### 2. Timeliness of § 1983 claim as to co-defendants Haddock and Correa.

Similarly, co-defendants Haddock and Carmelo Correa have also requested dismissal of the § 1983 claim for being time-barred. There is no controversy that co-defendant Haddock ceased as Carolina Police Area Headquarter Deputy Commander on April 13, 2000. Defts' Exhibit 15. Co-defendant Correa also ceased as Carolina Police Area Headquarter Commander on April 13, 2000. *Id.* Exhibit 14.

Supervisors, such as Haddock and Correa, can be held liable under § 1983 only on basis of their own acts or omissions. 42 U.S.C.A. § 1983. *Sanchez v. Alvarado,*

---

**13.** A court should not hastily dismiss on timeliness grounds a harassment claim where a continuing violation is alleged. *West v. Philadelphia Elec. Co.,* 45 F.3d at 755; *O'Rourke v. City of Providence,* 235 F.3d at 727–728.

101 F.3d 223 (1st Cir.1996). A plaintiffs' administrative appeal would not toll the one-year prescription period. The Court of Appeals for the First Circuit has found that the tolling statute would not apply to plaintiffs when the administrative action did not request identical relief to the judicial action. *See Fernandez v. Chardon*, 681 F.2d 42, 49 (1st Cir.1982), *aff'd sub nom. Chardon v. Fumero Soto*, 462 U.S. 650, 653, 103 S.Ct. 2611, 2614, 77 L.Ed.2d 74(1983); *Hernandez del Valle v. Santa Aponte*, 575 F.2d 321 (1st Cir.1978); *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315 (1st Cir.1978). *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 406–407 (1st Cir.1990).

Furthermore, and insofar as co-defendants Correa and Haddock, under § 1983 there is no *respondeat* superior liability. Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *See Camilo–Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir.1999). Absent direct participation, a, supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link [ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.' " *Hegarty v. Somerset County*, 53 F.3d 1367, 1379–80 (1st Cir.1995) (quoting *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902–03 (1st Cir.1988)). *See Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir.2005).

Plaintiff Hernández' claims as to Haddock and Correa evolve on failure to investigate or take action as to her sexual harassment complaint against Castaño Morell and the ensuing existence of a hostile work environment created thereunder. Co-defendant Haddock's and Correa's participation cannot extend beyond the one year limitation period since they had last authority to act as supervisors in the Puerto Rico Police Department. Plaintiff has not submitted any evidence to controvert the fact they held no further supervisory authority as to her claims after April 13, 2000.

Thus, plaintiff Hernández' claim as to Haddock and Correa under § 1983 are time barred since the filing of an administrative claim provides no tolling to plaintiff's § 1983 complaint as to these co-defendants. Since these co-defendants were removed from their positions at the Isla Verde Precinct since April of 2000, the federal claim herein being filed in September 27, 2002, absent tolling because of the filing of an administrative claim, it is recommended that summary judgment of plaintiff's § 1983 claims against co-defendant Haddock and Correa be GRANTED for being time-barred.

### 3. Pendent State Claims.

Defendants have requested summary disposition of plaintiff's claims under state law, Article 1802 and Law 69 of July 6, 1985, 32 L.P.R.A. § 1322 and Law 17 of April 22, 1988, for sex discrimination, that are related to plaintiff's § 1983 claim because of the one-year limitation period.

Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725,

86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Confederacion Laborista De Puerto Rico v. Cerveceria India, Inc.*, 607 F.Supp. 1077, 1081 (D.Puerto Rico 1985).[14]

In *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995).

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995); *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 257 (1st Cir. 1996).

The exercise of pendent jurisdiction is discretionary. In view of the fact that federal claims against co-defendant Castaño Morell survive the motion for summary judgment, pendent state claims would also survive summary judgment as to this defendant. Nonetheless, since all federal claims against co-defendants Haddock and Correa are time barred, pendent state claims would also be considered time-barred. Finally, as to co-defendants Rivera Correa and Comas, since all federal claims against them should be dismissed, for lack of a *prima facie* case, pendent state claims should also be dismissed.

## IV. CONCLUSION

In view of the foregoing, it is recommended that co-defendants' summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

1—Summary judgment be GRANTED as to co-defendants Haddock and Correa of plaintiff's claims under Title VII, § 1981, state Law No. 100 and § 1983;

2—Summary judgment be DENIED as to the Title VII claim against the Commonwealth of Puerto Rico;

3—Summary judgment be GRANTED as to co-defendants Rivera Correa and Comas for lack of plaintiff's *prima facie* case of retaliation and, thus, dismissal of all federal claims against Rivera Correa and Comas is recommended;

4.—Summary judgment be DENIED on co-defendants Pereira, Vivoni, Cáceres Méndez, Avilés Heredia, Torres Hernández, Miró Zayas, Rivera González and Toledo as to § 1983, being time barred and for lack of a *prima facie* case as to plaintiff's retaliation, sexual harassment and hostile work environment claims;

5—Summary Judgment be DENIED on co-defendant Castaño Morell's request for summary judgment on § 1983 being time barred be DENIED;

---

**14.** *See Ponce Federal Bank v. The Vessel "Lady Abby",* 980 F.2d 56 (1st Cir.1992) (Nonfederal claim against a person not otherwise a party in a case is sufficiently related to an admiralty claim to permit assertion of pendent party jurisdiction if state law claim against additional party arises out of common nucleus of operative facts with admiralty claim and resolution of factually connected claims in single proceeding would further interests of conserving judicial resources and fairness to parties).

7—Commonwealth of Puerto Rico's defense under *Faragher* and *Ellerth* be DENIED;

8.—Summary judgment be GRANTED on pendent state claims as to co-defendants Haddock, Correa, Rivera Correa and Comas and be DENIED as to remaining defendants.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").